UNITED STATES CONSTRUCTORS and CONSULTANTS, INC., APPELLANT, *v.* CUYAHOGA METROPOLITAN HOUSING AUTHORITY, APPELLEE.

[Cite as United States Constructors v. Housing Authority (1973), 35 Ohio App. 2d 159.]

(No. 32261—Decided June 18, 1973.)

*Mr. Sheldon Berns* and *Mr. Gary D. Greenwald,* for appellant.
*Mr. Walter C. Kelley, Jr.,* and *Mr. Fred J. Livingston,* for appellee.

KRENZLER, J. The plaintiff-appellant, United States Constructors and Consultants, Inc., hereinafter referred to as Constructors, filed a complaint in the Common Pleas Court of Cuyahoga County alleging that the defendant-appellee, Cleveland Metropolitan Housing Authority, hereinafter referred to as CMHA, illegally accepted a proposal for low-income housing to be constructed in the City of Cleveland Heights.

Constructors alleges that unless CMHA is restrained it will enter into a contract for the construction of 204 dwelling units for the elderly in the City of Cleveland Heights under the "Turnkey" method, which is illegal under R. C. 3735.36 because that section requires that all contracts be awarded to the lowest and best bidder, and that CMHA's invitation to bid results in a negotiated contract rather than a competitively bid contract. Constructors also alleges that it was the lowest and best bidder and should be awarded the contract.

In the alternative, Constructors asks the Court to either award it the contract as the lowest and best bidder or declare the use of the "Turnkey" method by CMHA illegal under Ohio law.

References to local housing agencies and metropolitan housing agencies will hereinafter be by the abbreviations LHA and MHA respectively.

CMHA did not file an answer but filed a motion for

summary judgment pursuant to Civil Rule 56, stating that there was no genuine issue as to any material fact, and that it was entitled to judgment as a matter of law.

In support of its motion, CMHA argues that the "Turnkey" method is legal and can be used by it for the following reasons.

1. §3735.31(B) R. C., authorizes a MHA to develop low-income housing under the "Turnkey" procedure because that Section permits a MHA to purchase an interest in real property, and to purchase a completed project. §3735.32 and §3735.36 R. C. are not applicable to "Turnkey" housing. They only apply where the MHA acquires property, hires an architect to prepare plans and specifications, advertises for bids, receives bids, and awards a construction contract to the lowest and best bidder.

2. §3735.31(C) R. C., which permits a MHA to borrow money, accept grants or other financial assistance from the federal government and comply with such conditions as are necessary, authorizes the MHA to use the "Turnkey" method. Since federal financial assistance is conditioned upon development under the "Turnkey" procedure §3735.-31(C) authorizes CMHA to use the "Turnkey" method. CMHA cites as authority *Commissioner of Labor and Industries* v. *Lawrence Housing Authority* (1970), 358 Mass. 202, 261 N. E. 2d, 331; *Lehigh Construction Co.* v. *Housing Authority of the City of Orange* (1970), 56 N. J. 447, 267 At. 2d 41. Also see *Marino* v. *Town of Ramapo* (S. Ct. Rockland Co. 1971), 326 N. Y. S. 2d 162.

3. Congress pre-empted the field of low-income housing and in the event of a conflict between federal rules and state law, the federal rules will prevail. *Marino* v. *Town of Ramapo, supra.*

Constructors also filed a cross motion for summary judgment.

The parties stipulated the material facts and the trial court granted CMHA's motion for summary judgment and held that R. C. 3735.31 authorizes CMHA to develop low-income housing under the federal "Turnkey" method of development, and that R. C. 3735.32 and 3735.36 are not

applicable. The Court also overruled Constructors' motion for summary judgment.

Constructors filed this appeal and assigns as error the trial court's granting CMHA's motion for summary judgment and denial of its cross-motion for summary judgment.

The principal issue in this case is whether Ohio law permits CMHA to use the federal "Turnkey" method of acquiring property.

It is noted that the only CMHA program under attack is the "Turnkey" program, and the results of this case will not affect any other federal housing program available to CMHA.

In order to resolve the issues raised in this case, we must briefly review Ohio law relating to MHAs.

In 1933 the Ohio Legislature enacted G. C. 1078-29 through 1078-41, now R. C. 3735.27 through 3735.50, entitled "Housing Authority Law."

In substance these code sections provide that if the State Board of Housing finds unsanitary or unsafe inhabited housing conditions, or a shortage of safe and sanitary housing conditions available to persons who lack the amount of income necessary to live in a safe, decent and sanitary dwelling without financial assistance, it may create Metropolitan Housing Authorities. R. C. 3735.27.

The powers of MHAs are enumerated in R. C. 3735.31, which in substance provides that a metropolitan housing authority constitutes a body corporate and politic; it may clear, plan and rebuild slum areas within its district; provide safe and sanitary conditions to families of low income; it may sue and be sued; receive grants from state, federal, and other governments, and private sources, R. C. 3735.31 (A); determine what areas constitute slum areas, and prepare plans for housing projects in these areas; purchase, lease, sell, exchange, transfer, assign or mortgage any property, real or personal, or any interest therein, or acquire the same by gift, request, or eminent domain; own, hold, clear and improve property, R. C. 3735.31(B).

R. C. 3735.31(C) provides that a MHA may borrow

money, or accept grants or other financial assistance from the federal government in aid of any housing project, and comply with such conditions as are necessary, convenient or desirable.

R. C. 3735.36 provides that when a MHA has acquired the property necessary for any project, it shall proceed to make plans and specifications for carrying out the project and shall advertise for bids, and award a contract to the lowest and best bidder.

The cornerstone of R. C. 3735.36 is competitive bidding. Competitive bidding is well recognized in public matters because it gives everyone an equal chance to bid, eliminates collusion, and saves taxpayers money. There has been a strong public policy in favor of competitive bidding to protect the public and eliminate collusion. It fosters honest competition in order to obtain the best work and supplies at the lowest possible price because taxpayers' money is being used. It is also necessary to guard against favoritism, imprudence, extravagance, fraud and corruption. Competitive bidding statutes are to be construed for the benefit of taxpayers and not bidders. The guidepost is the public interest.

Traditionally, MHAs in Ohio provided low-cost housing by complying with federal law and Department of Housing and Urban Development regulations and §3735.32 and §3735.36 R. C. They acquired property, either by negotiation or by eminent domain, cleared the property, prepared plans and specifications, advertised for bids, and awarded contracts to the lowest and best bidder. This is what is normally known as a construction contract.

In 1966 the United States Congress decided it was in the best interests of the country to have ''Turnkey'' housing in which an owner of land would make a proposal to a LHA agreeing to construct a building designed by him on his land and according to his plans and specifications, which would be prepared by his architect, and upon completion the building would be turned over to the LHA ready for occupancy and at that time it would be paid for by the LHA. In other words, when the building was com-

pleted and ready for occupancy, the developer would give a key to the LHA, thus, the name "Turnkey." This has been recognized by HUD as a contract for sale of property in contrast to a construction contract.

Congress decided to adopt this program as a method of quickly producing a greater volume of low-cost housing with flexibility in design.

In summary, the sequence of the principal steps of a "Turnkey" project are as follows: (Low-rent Housing Turnkey Handbook RHA 7420.1:)

1. advertisement by the LHA for Turnkey proposals;

2. the evaluation of proposals by the LHA and the Regional Housing Assistance Office (HAO);

3. appraisal of the proposed site;

4. feasibility conference during which agreement is reached on the project design and the price of the land;

5. The developer's preparation of preliminary drawings and outline specifications;

6. independent cost estimates;

7. the negotiation conference during which a price is agreed upon;

8. the preparation of the LHA Development Program;

9. letter of intent by LHA;

10. the developer's preparation of working drawings and specifications and their review and approval by the LHA and the HAO;

11. the submittal of such working drawings and specifications for updated cost estimates;

12. the execution and approval of the contract of sale between the developer and the LHA;

13. start of construction.

The thrust of the "Turnkey" development is that the owner or developer makes a proposal to sell to the LHA a completed property consisting of the designated number of dwelling units and related appurtenances upon the site owned by the developer. The developer uses his own architect, his own land; has his own design and his own plans and specifications prepared by his architect, but approved by the LHA and HUD.

HUD considers "Turnkey" agreements as a proposal by a developer to sell a completed building to the LHA with the approval of HUD. It does not consider such agreements to be construction contracts.

We must first determine whether the powers of CMHA enumerated in R. C. 3735.31 may be exercised independently of R. C. 3735.36, or if R. C. 3735.31 and 3735.36 are to be read in *pari materia.*

It is obvious that when the Ohio Legislature enacted Chapter 3735, it did not contemplate "Turnkey" housing. However, the powers enumerated under R. C. 3735.31 are broad enough to permit the CMHA to enter into a contract for the acquisition of a completed building.

R. C. 3735.31(B), which allows a MHA to purchase any interest in real property permits CMHA to enter into a contract to purchase a completed building by complying with the federal "Turnkey" rules promulgated by HUD. This may be done independently of R. C. 3735.36. The "Turnkey" method of acquiring property by CMHA is legal under Ohio law.

Ohio law thus provides MHAs alternative methods of acquiring property. They may use either R. C. 3735.31(B) and acquire completed projects under the "Turnkey" method or enter into construction contracts under R. C. 3735.36.

One of Constructors' arguments is that competitive bidding eliminates collusion and that the "Turnkey" method permits collusion. This argument is not well founded. There are many safeguards in the "Turnkey" method, such as the independent appraisals of the land value and review of cost estimates by both LHA and HUD. These are sufficient to prevent collusion.

It is noted that the appellant also asked the trial court to award it the contract as the lowest and best bidder. In order to have competitive bidding in awarding a contract to the lowest and best bidder, all of the elements must be common to the bidding procedure. In bidding a construction contract, there is usually one parcel of land and one set of plans and specifications that is given to all of the

prospective bidders. But it is impossible to use competitive bidding procedures under the "Turnkey" method because there is more than one parcel of land involved and each site is unique and has different characteristics. Further, each developer prepares a set of plans and specifications and has a different design.

Constructors' assignment of error that the "Turnkey" method is illegal under Ohio law is not well taken.

CMHA's two other arguments noted above are not valid and do not affect the decision in this case but require some brief discussion.

CMHA contends that R. C. 3735.31(C), which authorizes CMHA to borrow money or accept grants or other financial assistance from the federal government in aid of any housing project and comply with such conditions as are necessary, convenient or desirable, permits CMHA to use the "Turnkey" method. This argument is not well taken.

R. C. 3735.31(C) does not authorize CMHA to use the "Turnkey" method if it is otherwise illegal under Ohio law. The Ohio Legislature did not intend that the rules and regulations of an agency lending money or credit to a MHA would take precedence over Ohio laws in conflict with such regulations. A lending agency's regulations cannot in effect repeal or amend Ohio law.

Further, R. C. 3735.31(C) permits compliance with procedural and not substantive conditions.

CMHA's third argument is that the federal government pre-empted the field of housing, and that in the event of a conflict between the federal and state law the federal law will prevail.

It is well recognized that in instances where Congress has exercised exclusive jurisdiction over a subject, and there is a conflict between federal and state law, federal law prevails.

However, in matters that are purely local in nature, or where the federal government has not enacted legislation exercising jurisdiction over a subject, state laws and regulations on that subject are valid.

In the present case, Congress did not enact legislation exercising exclusive jurisdiction in regard to housing. The federal legislation merely sets forth a national housing policy, to promote the general welfare of the nation by employing its funds and credit to assist the states and their political subdivisions in eliminating unsafe and unsanitary housing conditions and the acute shortage of decent, safe and sanitary dwellings for families of low-income in urban areas. 42 U. S. C. A., §1401. The legislation permits the federal government to offer and provide financial assistance, in the form of grants and/or loans to state or local housing agencies to develop low-rent housing. 42 U. S. C. A., §§1409 and 1411. It is clear from reading 42 U. S. C. A., §§1401 to 1436 that Congress did not intend to limit or exclude state action or to exercise supremacy in this area. There is no conflict between the federal law and regulations and Ohio law in regard to housing. CMHA's third argument is therefore not valid.

Because R. C. 3735.31(B) permits a MHA to acquire a completed building, the "Turnkey" method is legal under Ohio law.

The trial court did not err in granting CMHA's motion for summary judgment and denying Constructors' motion for summary judgment.

*Judgment affirmed.*

SILBERT, P. J., and COOK, J., concur.

COOK, J., of the Eleventh Appellate District, sitting by designation in the Eighth Appellate District.