HOUSING AUTHORITY OF THE CITY OF NEWARK, A BODY CORPORATE AND POLITIC, PLAINTIFF-APPELLANT, v. ALAN SAGNER, COMMISSIONER, DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 11, 1976—Decided June 1, 1976.

Before Judges Lynch, Larner and Horn.

*Mr. Paul J. Hirsh* argued the cause for appellant (*Messrs. Friedman & D'Alessandro,* attorneys; *Messrs. Edward G. D'Alessandro and Michael F. Lombardi* on the brief).

*Mr. Steven A. Tasher,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General, attorney; *Ms. Erminie L. Conley,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

Horn, J. A. D. This appeal raises a single issue — whether the Contractual Liability Act, *N. J. S. A.* 59:13–1 *et seq.,* is applicable to an action brought by a public entity against the State. The trial judge held that it was applicable and dismissed the complaint because of plaintiff's failure to comply with *N. J. S. A.* 59:13–10, which provides:

59:13–10. Claims affected by this chapter

The time limitations contained in section 5 of this chapter shall not apply to those claims accruing prior to the effective date of this chapter; provided, however, that any law suits on such claims must be filed in a court of competent jurisdiction within 6 months of the effective date of this chapter or they shall be forever barred.[1]

We are not concerned on this appeal with the merits of the claim asserted against the State. However, for a better understanding of the issue before us we will briefly relate the history which gave rise to the instant action.

 Plaintiff was duly organized pursuant to *N. J. S. A.* 55:14A–1 *et seq.* as a local housing authority. As such it is a public entity, exercising governmental functions. *English v. Newark Housing Auth.*, 138 *N. J. Super.* 425 (App. Div. 1976). On May 3, 1966 plaintiff and the State of New Jersey (State Highway Department, presently organized as the Department of Transportation, *N. J. S. A.* 27:1A–3), hereinafter designated as the State, entered into a written agreement whereby plaintiff was to acquire so much of certain real property in the City of Newark in a blighted area known as the Old Third Ward Urban Renewal Project between Avon and Springfield Avenues, as was in the then projected right-of-way of the Route 75 freeway.

In consideration of the services of plaintiff in acquiring said lands, providing relocation assistance to the residents affected by the acquisition and the transfer of title to the State, the State agreed to reimburse plaintiff for acquisition and other costs and expenditures specified in the written contract. Clause 13 of the agreement made it effective "if, as, and when, the State Highway Department actually carries out the presently tentative highway plan. Prior to such

---

[1]The trial judge also referred to the failure to comply with the notice provisions of the Contractual Liability Act, *N. J. S. A.* 59:13–5 and 6. However, in the view that we take, because plaintiff's alleged cause of action accrued before June 1, 1972, we need only consider § 10 of the act, *N. J. S. A.* 59:13–10.

final department approval, it is agreed that the State Highway Department is under no obligation to purchase the properties from the LPA [*sic,* Local Public Authority — the plaintiff]." The State denied liability on the merits and in addition set up as a bar the failure of plaintiff to comply with *N. J. S. A.* 59:13–1 *et seq.*

On February 21, 1974 or March 1, 1974 plaintiff instituted this action in the Chancery Division, seeking an order to compel the State to accept conveyances of land that it had acquired, allegedly pursuant to the agreement, and for damages in the amount of $11,100,000.[2] At the hearing below the parties stipulated that plaintiff's cause of action, if any, accrued on April 7, 1972 and that no notice of claim was ever given by plaintiff to the State as required by *N. J. S. A.* 59:13–5, 6 or 10. On March 19, 1975 the trial judge entered an order dismissing the complaint on his holding that plaintiff was bound by the provisions of the Contractual Liability Act and had failed to institute the instant action within the time limited by *N. J. S. A.* 59:13–10.

■ Plaintiff first contends that the so-called grandfather clause (*N. J. S. A.* 59:13–10) is not applicable to its claim against the State by virtue of *N. J. S. A.* 27:5D–1 and 2 which, it argues, constitutes a waiver of sovereign immunity with respect to claims of municipal housing authorities against the State arising out of cooperative agreements entered into between them. This statute authorizes the commissioner of transportation[3] and each municipal housing authority to enter into contracts such as the one made between plaintiff and the State Highway Department in 1966, as

---

[2]There is a discrepancy with regard to the filing date of the complaint. Plaintiff's copy of the complaint bears a handwritten filing date of February 21, 1974, whereas defendant claims a filing date of March 1, 1974. The difference in dates is without any practical significance.

[3]At the time the statute was enacted in 1963 his title was State Highway Commissioner.

already mentioned. Plaintiff refers particularly to that part of *N. J. S. A.* 27:5D–1 which states:

> * * * Such cooperative agreements may also provide for the acquisition and clearance of such property, necessary for highway purposes, by the municipal housing authority * * * and the transfer thereof to the State upon payment by the State to the municipality of an equitable share of the cost of such acquisition, and clearance, if any.

This argument was not presented to the court below. It is well settled that, absent a compelling reason, appellate courts will decline to consider questions or issues not properly presented at the trial level when an opportunity for such a presentation is available. *Nieder v. Royal Indemnity Ins. Co.*, 62 *N. J.* 229, 234 (1973); *Reynolds Offset Co., Inc. v. Summer*, 58 *N. J. Super.* 542, 548 (App. Div. 1959), certif. den. 31 *N. J.* 554 (1960). However, because of the importance of the matter involving public bodies, we have decided to consider this argument on its merits.

Plaintiff urges that when the Legislature expressly empowered the State Highway Commissioner to provide for the transfer of properties to the State upon payment by the State of the costs incurred, a "strong inference" arose that the Legislature did not intend that the municipal housing authority remain without remedy in the event of breach of such cooperative agreement. In effect, plaintiff urges that the Contractual Liability Act does not apply to actions against the State where there is a waiver of sovereign immunity; that, since *N. J. S. A.* 27:5D–1 and 2 inferentially authorize an action, its demand is not one of "such" claims as is referred to in *N. J. S. A.* 59:13–10, which requires suit thereon to be instituted within six months after the effective date of the Contractual Liability Act. We disagree with plaintiff's assumption that any such inference arose.

There is nothing stated in *N. J. S. A.* 27:5D–1 and 2 which can be said to imply an intention on the part of the Legislature to waive the State's immunity. The mere fact that an agency of the State is authorized to enter into

contracts with local housing authorities for the limited purposes expressed in the statute in no way raises such inference. Payment by the State to a housing authority is unequivocally authorized under the conditions stated in the statute; however, that does not connote any type of waiver.

Plaintiff asserts that *Briscoe v. Rutgers,* 130 *N. J. Super.* 493 (Law Div. 1974), supports its contention that *N. J. S. A.* 27:5D–1 and 2 imply the waiver of immunity. We disagree. The court therein held that the express power to sue and be sued contained in a public corporation's charter had the effect of a waiver of sovereign immunity with respect to the corporation. Where such waiver exists the provisions of *N. J. S. A.* 59:13–1 *et seq.* are inapplicable. Unlike the charter provisions referred to in *Briscoe v. Rutgers,* which authorized Rutgers, the State University, to sue and be sued, the State in the case at bar did not provide by *N. J. S. A.* 27:5D–1 and 2 that it could be sued. Under *N. J. S. A.* 59:13–1 *et seq.* the State's waiver of immunity is conditioned upon claimant's observance of the notice provisions, *N. J. S. A.* 59:13–5 and 6, or, where the claimant is excused from doing so because his claim accrued before the effective date of the Contractual Liability Act, then upon the institution of suit before December 1, 1972. See *N. J. S. A.* 59:13–3.

A similar argument was unsuccessfully pressed by plaintiff in the case of *Strobel Steel, &c., Co. v. State Highway Com.,* 120 *N. J. L.* 298, 302 (E. & A. 1938). Plaintiff therein was a contractor who sued the State Highway Commission for alleged monies due under a contract for the construction of a road. In response to defendant's successful motion to dismiss on the basis of sovereign immunity, plaintiff claimed on appeal that from the statutes creating the Commission it could be inferred that the Legislature intended that sovereign immunity should be waived as to the Commission. The court expressly rejected this argument, stating:

This contention is in conflict with the well settled principle of law that no public right can be taken away or protection of sovereign rights surrendered by mere inference or legal construction. Moreover, it may be said to be a fundamental rule of construction that what is not clearly granted by the state is withheld, and that statutes permitting suits against the state, being in derogation of sovereignty, must be strictly construed.

■ ■ Although *P, T & L Const. Co. v. Comm'r, Dept. of Transp.*, 55 *N. J.* 341 (1970) (hereafter *P, T & L, I*), being the first of three cases arising out of the same cause of action, overruled the immunity rule of *Strobel, supra,* the reasoning of *Strobel* concerning implied repealers has not been impaired. *N. J. S. A.* 27:5D–1 and 2 add no new dimension to the *Strobel* holding on this point. In granting the right to sue the State, the State may impose reasonable conditions with respect to actions brought against it. *P, T & L, I, supra; P, T & L, II,* 57 *N. J.* 439 (1971), and *P, T & L, III,* 60 *N. J.* 308, 312 (1972). Accordingly, this contention is without substance.

■ Plaintiff also urges that it is not a claimant within the meaning of *N. J. S. A.* 59:13–1 *et seq.* because the statute only applies to claims of private entities and not to those of public entities such as housing authorities. No authority for this contention is given in support thereof.

On the other hand, such an interpretation would contravene the legislative intent as expressed in the 1972 comment with respect to the Contractual Liability Act following *N. J. S. A.* 59:13-10:

\* \* \* The strict notice and filing requirements contained in section 5 are intended to encourage *all parties* contracting with the State to notify the State as soon as possible of any existing or potential claims. At the same time these requirements provide a sufficient period of time within which the appropriate State agency and the Attorney General may take administrative action to adjust the dispute. [Emphasis supplied]

Accordingly, we find this point to be unsound.

■ We also reject the argument that would analogize the law holding that statutes of limitations are inapplicable to governmental agencies.[4] The provisions of the Contractual Liability Act were enacted to protect governmental agencies specifically. This is not so with respect to statutes of limitations.

■ We find no merit to plaintiff's final point that the provisions of the Contractual Liability Act are inapplicable to it, since, in carrying out its duties under the instant agreement, it was acting as an agent of the Federal Government and that as such it is immune from the influence of such statutes under principles of federal supremacy.

Plaintiff rests its claim to sovereign federal status upon its contractual relationship with the Federal Urban Renewal Administration (HUD) because, it is argued, it entered into a loan and capital grant contract with a federal agency, the purpose of which was to provide for the extension of federal funds to the authority for urban renewal projects, and thereby became an arm of HUD.

Plaintiff was legislatively created by the State for the purpose of achieving a *state* policy. *N. J. S. A.* 55:14A-2. Under the Local Housing Authorities Law (*N. J. S. A.* 55:14-A-1, *et seq.*) plaintiff can sue and be sued and exercise the power of eminent domain. Its employees enjoy civil service status under guidelines established by the State. *N. J. S. A.* 55:14A-6.1. It is authorized to borrow money or accept contributions from the Federal Government to further the State's purposes. *N. J. S. A.* 55:14A-19. Although it has been held that a local housing authority is a "hybrid" in that for different purposes it can be an agency of the municipal, state or federal governments (*O'Keefe v. Dunn,* 89 *N. J. Super.* 383, 395-397 (Law Div. 1965), aff'd 47 *N. J.* 210

---

[4]*Veterans Loan Auth. v. Wilk,* 61 *N. J. Super.* 65 (App. Div. 1960); *Trustees, &c., Public Schools v. Ott & Brewer Co.,* 135 *N. J. Eq.* 174 (Ch. 1944), and *Trenton & Mercer County Traction Corp. v. Ewing,* 87 *N. J. Eq.* 397 (Ch. 1917).

[1966]), the majority of decisions deem it to be an agency and instrumentality of the municipality. *DeVita v. Housing Authority, City of Paterson,* 17 *N. J.* 350, 360 (1955); *Dep't. of Civil Service v. Newark,* 131 *N. J. Super.* 275, 278 (App. Div. 1974); *Tumulty v. Jersey City,* 57 *N. J. Super.* 503, 511 (App. Div. 1959).

We find in none of the cases submitted by plaintiff support for its contention on this point. *Tim v. Long Branch,* 135 *N. J. L.* 549 (E. & A. 1947), does not support the contention that a municipal or state agency may become a federal instrumentality under certain circumstances, so as to be unaffected by the operation of state or municipal legislation due to federal sovereignty. In that case the National Housing Agency was held to be immune from the operation of a local zoning ordinance. That agency was clearly a federal one and not a state one.

*Leslie Miller, Inc. v. State of Arkansas,* 352 *U. S.* 187, 77 *S. Ct.* 257, 1 *L. Ed.* 2d 231 (1956), held that a contractor who was the successful bidder on a federal construction project could not be convicted pursuant to state legislation which required any contractor engaged in construction work costing $20,000 or more to procure a license. The rationale was that the licensing statute interfered with the Federal Government's power to select contractors and was in conflict with federal statutes and regulations enacted to ensure the reliability of persons and companies contracting with the federal government.

*United States v. Davis Mining,* 187 *F. Supp.* 911 (W. D. Wis. 1960), where a prior mortgage lien of the Federal Government was held to be unimpaired by state law, and *United States v. Miller,* 134 *F. Supp.* 276 (E. D. Pa. 1955), where it was held that the Federal Government could attach the wages of a Pennsylvania debtor notwithstanding a state statute prohibiting attachment of wages, are similarly distinguishable. The cases which plaintiff relies on involve situations where the federal interest was directly involved. Certainly the advancement of monies by the Federal Govern-

ment to a state agency was never intended to convert that agency into an arm of the federal government itself.

42 *U. S. C. A.* § 1401, under which grants of funds by the states for urban renewal purposes are authorized, declares the policy of the Federal Government is "to vest in the local public housing agencies the maximum amount of responsibility in the administration of the low-rent housing program, including responsibility for the establishment of rents and eligibility requirements * * * ." The federal intent is to keep local housing agencies independent bodies to advance local interests primarily.

Our own state policy is that a local housing authority shall constitute an agency and instrumentality of the municipality creating it. *N. J. S. A.* 55:14A-4. In *United States Con. & Con., Inc. v. Cuyahoga M. H. Auth.*, 35 *Ohio App.* 2d 159, 300 *N. E.* 2d 452 (App. Ct. 1973), plaintiff, the low bidder on a federally assisted housing project, contested defendant housing authority's method of awarding contracts. The central issue involved was the legality of defendant's utilization of the federal "turn-key" method in contracting for construction of dwelling units. In response to plaintiff's argument that the Federal Government had preempted the field of housing, the Ohio appellate court said:

> In the present case, Congress did not enact legislation exercising exclusive jurisdiction in regard to housing. The federal legislation merely sets forth a national housing policy, to promote the general welfare of the nation by employing its funds and credit to assist the states and their political subdivisions in eliminating unsafe and unsanitary housing conditions and the acute shortage of decent, safe and sanitary dwellings for families of low-income in urban areas. 42 *U. S. C. A.*, § 1401. The legislation permits the federal government to offer and provide financial assistance, in the form of grant and/or loans to state or local housing agencies to develop low-rent housing. 42 *U. S. C. A.*, §§ 1409 and 1411. It is clear from reading 42 *U. S. C. A.*, §§ 1401 to 1436 that Congress did not intend to limit or exclude state action or to exercise supremacy in this area. There is no conflict between the federal law and regulations and Ohio law in regard to housing. * * * [300 *N. E.* 2d at 456–457]

Similarly, in the case at bar there is no conflict between the federal housing act and New Jersey law. We find no basis for construing plaintiff housing authority to be an arm of the Federal Government so as to imply supremacy with respect to the laws of the very state which created it.

██ Finally, we have reviewed *N. J. S. A.* 59:13–1 *et seq.* generally with a view to ascertaining whether it displays any other policy which would warrant plaintiff's asserted interpretation of the law. As with the similar provisions contained in the Tort Claims Act, *N. J. S. A.* 59:1–1 *et seq.,* the notice provisions of the Contractual Liability Act are intended to give to the State an opportunity to settle and to make an investigation for the purpose of preparing for trial. The same reasoning to uphold the notice provisions prevails where the State is the alleged debtor. Due to the large amount of claims and attendant litigation which it must be involved in an orderly process is mandatory. These considerations are as applicable to public entities making contractual claims upon the State as they are to private entities making claims upon the State. Sound reason impels us to hold that the Contractual Liability Act was intended to limit contractual claims of public as well as private entities. Plaintiff therefore was obliged to comply with *N. J. S. A.* 59:13-10.

For the foregoing reasons the judgment entered below is affirmed.