Gerardo Martínez Malavé et al., querellantes y recurridos, *v.* Corporación de Renovación Urbana y Vivienda de Puerto Rico, querellada y peticionaria; Santiago Carmona Bultrón et al., querellantes y recurridos, *v.* Corporación de Renovación Urbana y Vivienda de Puerto Rico, querellada y peticionaria.

*Número:* O-75-427      *Resuelto:* 31 de enero de 1977

*Benjamín Rodríguez Ramón, Ildefonso Mora Ramos y Teodoro Peña García,* abogados de la peticionaria; *Antonio Figueroa Rivera,* abogado de los recurridos.

### SENTENCIA

Se revoca la resolución del Tribunal Superior y se devuelve el caso a dicho foro para la continuación de los procedimientos.

Así lo pronunció y manda el Tribunal y lo certifica el

señor Secretario. El Juez Presidente, Señor Trías Monge anunció la sentencia del Tribunal y emitió una opinión a la cual se unen los Jueces Asociados Señores Rigau, Díaz Cruz e Irizarry Yunqué. Los Jueces Asociados, Señores Torres Rigual, Martín y Negrón García concurren sin opinión. El Juez Asociado Señor Dávila disiente sin opinión.

(Fdo.) Ernesto L. Chiesa

*Secretario General*

—O—

Opinión emitida por el Juez Presidente, Señor Trías Monge a la cual se unen los Jueces Asociados Señores Rigau, Díaz Cruz e Irizarry Yunqué.

San Juan, Puerto Rico, a 31 de enero de 1977

Varios empleados de la Corporación de Renovación Urbana y Vivienda de Puerto Rico (CRUV) y de su antecesora, la Autoridad sobre Hogares de Puerto Rico, se querellaron de que no se les ha compensado su labor con arreglo al salario mínimo y a la legislación correspondiente al pago de horas extras, el sétimo día, las vacaciones y la hora para almuerzo.

La CRUV interpuso básicamente dos defensas. Adujo en primer término que "Los servicios rendidos por los querellantes . . . se rindieron en relación con programas de viviendas públicas de renta baja . . . llevados a cabo mediante subsidios federales, cuya área ha sido cubierta íntegramente . . . por legislación federal, razón por la cual, cualquier interpretación contraria a la legislación federal aplicable levantaría una sustancial cuestión constitucional." Como segunda defensa afirmativa planteó que "La querellada . . . se dedica única y exclusivamente al desempeño de funciones puramente gubernamentales . . . y no opera por tanto como negocio o empresa privada de ninguna índole, razón por la cual la querella

. . . no contiene alegaciones de hecho suficientes como para justificar ningún remedio a su favor. . . ."

Tras la celebración: de vistas para dilucidar estas defensas, el Tribunal Superior declaró sin lugar la segunda y señaló los casos para ventilación en su fondo. La CRUV ha acudido ante nos en petición de *certiorari* y sostiene que erró el Tribunal al no considerar su primera defensa afirmativa y al declarar sin lugar la segunda.

Usualmente este Tribunal no conocerá de ninguna cuestión que no haya sido planteada o resuelta por el Tribunal c agencias administrativas de que se haya recurrido. *Autoridad sobre Hogares* v. *Sagastivelza*, 71 D.P.R. 436, 439 (1950). Esta doctrina, unida a la circunstancia de que en el récord se carece de ciertos hechos básicos para que este Tribunal se pronuncie en definitiva sobre aspectos vitales de los dos errores señalados, obliga a la devolución del caso al Tribunal Superior. Para la debida identificación de las cuestiones a ventilarse y de la prueba necesaria para su examen es imprescindible, sin embargo, que sentemos ciertas normas, hasta el grado permitido por el récord, para guiar los procedimientos ulteriores en esta controversia.

## I

*El impacto de la legislación federal.*

La doctrina del desplazamiento de los estados federados por el gobierno federal en determinadas zonas de legislación plantea problemas teóricos de gran interés respecto a su fuente y naturaleza. Se discierne en Estados Unidos notable confusión sobre los contornos de esta doctrina y su relación con la cláusula de supremacía de la Constitución de Estados Unidos, la teoría de la prohibición y otros esquemas. (¹)

---

(¹) En Estados Unidos la prohibición de actuar entra en juego cuando un estado no puede legislar sobre determinada materia por razón del esquema federal de distribución de poderes y no por causa de que el Congreso apruebe válidamente una ley en conflicto (cuestión de supremacía) o

Borden, H. L., *A Conceptual Refinement of the Doctrine of Federal Preemption*, 22 J. of Pub. L. 391 (1973) ; Freeman, *Dynamic Federalism and the Concept of Preemption*, 21 De Paul L. Rev. 630 (1972) ; Note, *Federal Preemption: Governmental Interests and the Role of the Supreme Court*, 1966 Duke L.J. 484; Powell, T. R., *Current Conflicts Between the Commerce Clause and State Police Power, 1922–1927*, 12 Minn. L. Rev. 321 (1928). Los vínculos constitucionales diferentes que existen entre Estados Unidos y Puerto Rico naturalmente crean dificultades adicionales para el análisis de estas cuestiones. Véase: *Reynal* v. *Tribunal Superior*, 102 D.P.R. 260, 265–266 (1974).

Es innecesario en este caso adentrarnos en el laberinto de los posibles cambios de enfoque que causen en este campo las relaciones especiales existentes entre Puerto Rico y Estados Unidos. Bajo ninguna de las doctrinas discutidas puede resolverse que la materia en controversia se rige exclusivamente por la ley federal. La ley que invoca la CRUV para sostener su contención es la Ley de la Vivienda de Estados Unidos de 1937, según enmendada, 42 U.S.C. sec. 1401 *et seq.* No se aplica la teoría de la prohibición o carencia de poder, ya que el Estado Libre Asociado de Puerto Rico posee claramente la facultad de legislar en el campo de la vivienda, así como en materia de legislación laboral. Tampoco puede invocarse la cuestión de supremacía porque no se ha alegado ni hemos hallado conflicto alguno entre la legislación federal y la puertorriqueña. Examinemos en tercer término la aplicabilidad de la versión clásica de la doctrina del desplazamiento.

La aplicación de esta doctrina depende en esencia, siempre que exista poder en el Congreso para actuar y sujeto a otras salvaguardas, de su intención de reemplazar a los es-

resuelva legítimamente despojar al estado de una facultad de la cual éste de otro modo disfrutaría (la verdadera teoría del desplazamiento). Causa usual de la confusión entre estas últimas dos doctrinas es que tienen como fuente común en el caso de los estados la cláusula de supremacía.

tados como único legislador en una materia específica. *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142 (1963); *Huron Portland Cement Co.* v. *Detroit*, 362 U.S. 440, 443 (1960). Las cortes son renuentes "a inferir a la ligera que el Congreso ha lesionado la soberanía tradicional de los estados con la mera aprobación de una ley. . . ." *Allen-Bradley Local* v. *Board*, 315 U.S. 740, 749 (1942). Usualmente se exige prueba robusta de que tal fue la intención del Congreso, *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947), o de que dicha intención pueda razonablemente deducirse del hecho de que la materia es de tal naturaleza que exige reglamentación uniforme por el Congreso federal. *Amalgamated Assoc. of Street, Elec. Ry. & Motor Coach Employees of America* v. *Lockridge*, 403 U.S. 274 (1971); *Pennsylvania* v. *Nelson*, 350 U.S. 497 (1956).

El examen del texto y del historial legislativo de la Ley de Vivienda de Estados Unidos no revela propósito alguno por parte del gobierno federal de suplantar a los estados en la construcción, operación o el financiamiento de la edificación de hogares a bajo costo o de otra naturaleza o de dictar la compensación máxima que puede devengar un obrero en un proyecto local de construcción de viviendas a bajo costo. [2] Se trata de legislación suplementaria. Se expresa en la Exposición de Motivos de la Ley, 42 U.S.C. sec. 1401:

"Se declara que es política de los Estados Unidos . . . ayudar a los estados y sus subdivisiones políticas . . . a remediar . . . la aguda escasez de viviendas seguras, sanitarias y decentes para las familias de ingresos bajos . . . . [L]as agencias locales de vivienda pública tendrán la máxima responsabilidad en la administración del programa de hogares a bajo costo . . . ."

---

[2] De haber mediado tal propósito habría que analizar la constitucionalidad de la legislación federal a la luz de *National League of Cities* v. *Usery*, 426 U.S. 833, 49 L.Ed.2d 245 (1976) y otras autoridades. El impacto de *Usery* en casos de esta naturaleza deberá analizarse en momento oportuno, cuando se cuente con un récord adecuado.

Más adelante se requiere que todo contrato de préstamo, aportación o pareo entre la agencia federal y la estatal "contendrá una disposición al efecto de que todos los obreros y mecánicos [empleados en el desarrollo de proyectos de vivienda a bajo costo] devengarán salarios no menores que los que prevalezcan en la localidad, según se determine [tal hecho] previamente por el Secretario del Trabajo de Estados Unidos conforme a la Ley Davis-Bacon. . . ." 42 U.S.C. sec. 1416(b). El estado queda libre para requerir el pago de salarios más altos.

El historial legislativo refuerza la interpretación expuesta. 1949 U.S. Code Cong. Serv. pág. 1550 y ss.; 1974 U.S. Code Cong. Serv. pág. 4273 y ss. Los tribunales que se han enfrentado a esta cuestión han rehusado sostener que la Ley de Viviendas de Estados Unidos cubre íntegramente el campo. *Housing Authority of the City of Newark* v. *Sagner*, 361 A.2d 565 (N.J. App. 1976); *United States Constructors & Consultants, Inc.* v. *Cuyahoga Metropolitan Housing Authority*, 300 N.E.2d 452 (Ohio App. 1973); *cf. Commissioner of Labor and Industries* v. *Boston Housing Authority*, 188 N.E.2d 150 (Mass. 1963).

Existe, por último, una cuarta situación en que tampoco es enteramente correcto hablar de la doctrina del desplazamiento, pero que es la que verdaderamente nos ocupa aquí. Lo que ocurre en estos casos es que un estado se obliga al cumplimiento de ciertas condiciones en convenio celebrado con una agencia federal, a cambio usualmente de colaboración económica de ésta. En estas circunstancias no se trata del desplazamiento por el gobierno federal del poder estatal sobre determinada materia; se trata de la adopción por acción contractual del estado de determinadas normas federales. Esta cuarta doctrina tiene naturalmente sus límites. No podría utilizarse el instrumento del subsidio o la dádiva como arma contra el esquema básico de la federación u otras formas de relación con ésta, como método de absorción por el gobierno

federal de facultades constitucionalmente encomendadas o reservadas a los estados. Es imprescindible, además, que les asista poder al gobierno federal y al del estado para obligarse al contrato que se otorgue.

Del récord parcial con que contamos se desprende que se celebraron ciertos contratos de subsidio entre la agencia federal y la CRUV, y posiblemente con su antecesora. No se presentaron en evidencia copias firmadas de estos contratos, por lo que ignoramos cuántos se otorgaron, su fecha, los proyectos que cubren y aun sus disposiciones específicas. Tampoco desfiló prueba sobre cuáles querellantes trabajaron en qué proyectos, en qué capacidad, por cuánto tiempo, bajo cuáles contratos, si algunos, y en qué fase del trabajo, ya que hay normas distintas que controlan diversas situaciones. El Tribunal Superior deberá recibir prueba sobre estos extremos y hacer las determinaciones de hecho correspondientes. Consta en autos, no obstante, un modelo de contrato en blanco cuyas disposiciones aparentemente se incluyen en por lo menos algunos de los contratos que se efectuaron. Esto nos permite, junto a disposiciones legislativas y reglamentarias federales, 42 U.S.C. sec. 1416(b), 24 C.F.R. sec. 275.4, fijar ciertas guías que faciliten el trámite ulterior de estos casos.

La sección 115 de los Términos y Condiciones del referido contrato adopta esencialmente la disposición federal citada, 42 U.S.C. sec. 1416(b), respecto al pago de salarios no menores que los prevalecientes en la localidad. Véanse también las secciones 119 y 215 de los Términos y Condiciones. Estamos, por tanto, al menos en cuanto a buena parte de estos casos consolidados, ante un ejemplo de adopción por una agencia puertorriqueña de una ley federal. Tal acto es en esta instancia prima facie legítimo, ya que la CRUV goza de autorización legislativa expresa para celebrar convenios con agencias federales sobre los salarios y otras condiciones de trabajo en proyectos de hogares, 17 L.P.R.A. sec. 38(b). Lo que se hizo fue acordar la vigencia de los salarios prevalecientes, sin

echar abajo la legislación local, lo cual podría presentar problemas constitucionales bajo determinadas circunstancias; el gobierno federal goza de poder para obligarse también al mismo efecto, *Commissioner of Labor and Industries* v. *Boston Housing Authority*, 188 N.E.2d 150 (Mass. 1963) ; y este contrato específico no ofende otros principios constitucionales básicos antes expresados. (³)

En vista de las disposiciones citadas del formato de convenio deberá también presentarse prueba sobre las determinaciones específicas, si algunas, que ha hecho el Secretario del Trabajo de Estados Unidos bajo la Ley Davis-Bacon, 40 U.S.C. sec. 276a *et seq.*, sobre los salarios prevalecientes en la localidad, conforme a cada contrato de subsidio envuelto en estos casos. Debe igualmente recibirse prueba sobre las acciones, si algunas, tomadas por dicho funcionario bajo la sección 119 citada de los Términos y Condiciones para resolver las disputas sobre clasificaciones o los salarios prevalecientes que puedan haber surgido. Deberá precisarse el impacto de la Proclama Presidencial Núm. 4031 de 23 de febrero de 1971, 29 C.F.R. 5.0(b) (1976), en estos contratos.

Es de importancia en estos casos precisar, además, el significado del término "salarios" (*Wages*) en la legislación y reglamentación federal. La Ley Davis-Bacon provee que la frase "salarios prevalecientes" incluye, entre otros elementos, el salario mínimo, el pago básico por hora, las aportaciones a planes médicos, de desempleo y otra naturaleza, la compensación por vacaciones y días de fiesta "u otros beneficios marginales, pero solo cuando las leyes federales o estatales no le requieren al contratista o subcontratista proveer tales bene-

---

(³) No está envuelta en este aspecto de estos casos, conforme a los hechos ante nos, la disposición del Art. II, Sec. 16, de la Constitución del Estado Libre Asociado de Puerto Rico que reconoce el derecho de todo trabajador a recibir igual paga por igual trabajo, ya que los salarios mínimos que se exigen son los prevalecientes en la localidad. De haber trabajadores no cubiertos por convenios interagenciales estaría envuelta la aplicabilidad o no de la Sec. 16.

ficios." 40 U.S.C. sec. 276a(b). Véase también: 29 C.F.R. secs. 5.22–5.32. El Secretario viene obligado a realizar una determinación separada sobre el costo de tales beneficios marginales. 29 C.F.R. sec. 5.25. Debe recibirse prueba sobre este otro particular. Sobre horas extras debe recordarse que el modelo de contrato en evidencia contiene una disposición específica, aunque tampoco excluye la facultad de Puerto Rico de fijar tipos más altos. Véase la sec. 12(A)(18) del contrato.

De lo anterior surge que no podrá pagársele a ningún trabajador cubierto por un contrato de subsidio, en cuanto a los beneficios que tal contrato cubra, menos que lo acordado. La legislación federal(4) no suplanta la puertorriqueña. Si el trabajador no está cubierto por la legislación federal, estos pleitos se regirán por la interpretación que se les imparta a las leyes locales. Igual ocurrirá si tal interpretación exige el pago de sumas mayores a los salarios prevalecientes. No afecta estas conclusiones el hecho de que la CRUV no venga obligada a observar cualquier porción de la legislación del país por razón de su alegada clasificación como parte del sector público, cuestión que en su día resolveremos. Nuestra Constitución dejó libre a la Asamblea Legislativa de Puerto Rico para autorizar a cualquier agencia, como ocurrió aquí, a obligarse contractualmente a pagar no menos de determinados salarios. Debe advertirse que las reclamaciones que aquí se hacen dependen básicamente de la aplicación de leyes locales o de disposiciones contractuales al efecto. No fluyen de la Constitución del Estado Libre Asociado, como en el caso del derecho a la huelga de ciertos trabajadores. De existir querellantes en estos casos no cubiertos por algún convenio interagencial, habría que discutir el impacto de la disposición

---

(4) Debe recordarse que en virtud de las enmiendas efectuadas en 1974 a la Ley Federal de Relaciones Razonables del Trabajo, el gobierno de Estados Unidos fijó salarios mínimos para los empleados del gobierno de Puerto Rico, sus agencias y subdivisiones. 29 C.F.R. sec. 700.2. Debe analizarse, a la luz de un récord más amplio, la constitucionalidad de esta reglamentación en vista de lo resuelto en *Usery.*

constitucional de igual paga por igual trabajo. No podemos pronunciarnos sobre este extremo en ausencia de más hechos.

## II

*La aplicabilidad de la legislación puertorriqueña.*

Es necesario igualmente contar con datos adicionales para resolver la segunda defensa de la CRUV. ¿Cuáles fueron los períodos de tiempo trabajados? Necesitamos esta información para saber cuáles son las leyes que debemos interpretar. Su lenguaje varía. Debemos también cerciorarnos de las leyes comprendidas en el marco de los convenios realizados. Ello podría afectar el análisis de varios problemas presentados aquí, ya que algunas reclamaciones podrían fundarse exclusivamente en algunas leyes locales.

Debe argumentarse y resolverse en primera instancia la cuestión de si los criterios enunciados en *A.A.A.* v. *Unión Empleados A.A.A.*, 105 D.P.R. 437 (1976), son de aplicación a estos pleitos o si cada ley en cuestión se guía por normas distintas. En uno y otro caso, para que el récord nos llegue completo, si es que se nos requiere revisar la sentencia que en su día recaiga, el Tribunal Superior deberá efectuar determinaciones de hecho sobre las circunstancias que afectan la aplicabilidad de cada criterio expuesto en *A.A.A.* o seleccionado por el tribunal de instancia.

Por las consideraciones expresadas, revocaría la resolución del Tribunal Superior y devolvería el caso a dicho foro para la continuación de los procedimientos en modo consistente con los términos de este fallo.

En vista de que las querellas en estos casos se radicaron en 1968 y 1971 se recomienda su pronto señalamiento para vista total en su fondo, sin aguardar a la decisión previa de las defensas afirmativas.