436 So.2d 507 (1983)
Mrs. Antoinette Ybos Davilla, Widow of Sidney T. DAVILLA
v.
Lowell F. JONES.
No. 82-C-2223.
Supreme Court of Louisiana.
June 27, 1983.
Rehearing Denied September 1, 1983.
Stephen M. Chouest, O'Keefe, O'Keefe & Berrigan, New Orleans, for applicant.
Philip E. James, Andrew I. Brown, Henican, James & Cleveland, New Orleans, for respondents.
DIXON, Chief Justice.
Plaintiff lessor, Antoinette Davilla, filed a rule to evict defendant lessee, Lowell F. Jones, on September 23, 1981, alleging nonpayment *508 of rent due. Defendant answered, asserting a right to withhold the rent in order to make necessary repairs to the property. The trial judge granted the rule to evict and the defendant took a suspensive appeal. The court of appeal reversed, 418 So.2d 724, finding that the dealings between this lessee and lessor relative to withholding the rent to make necessary wall repairs prevented the lessor from evicting the lessee. We granted lessor's application for writs. 422 So.2d 151 (La.1982).
Davilla and Jones signed a five year lease for part of a building at 333-335 Bourbon Street beginning in 1974, with an option to renew for five additional years. The monthly rent for the primary term was $500; the rent for the renewal period was $720. The lease provided that the lessee was responsible for all maintenance and repairs, excluding the roof and exterior walls, which were the responsibility of the lessor.
On February 4, 1981 Jones wrote to Davilla complaining of continuing problems with water leakage through the roof and the exterior walls. The letter noted that lessee's previous requests to the lessor to repair the property remained unanswered and formally demanded that the repairs be made. The letter advised that if repairs were not commenced within two weeks, "we will have no choice but to move on our own to secure the proper repair of these premises, which are absolutely necessary, and to secure such repair at a reasonable cost. We will, in turn, deduct the cost of these expenses from such future rental as is necessary to reimburse our expenses herein."
Jones testified that in response to the letter, a roofing contractor, Mr. Shaw, was sent to the property at the lessor's request. He examined the building with the lessee and stated he could not give a firm price, but would quote to the lessor on a materials and labor basis only. Repairs were subsequently undertaken by Mr. Shaw with the roofing work completed in mid-April at a cost of $2500. Jones had not paid the rent due for March or for April. He testified:
"When he got near the end of completion of the roofing work I said to the man, `Now, let's get on the rest of the job.' And he said, `I can't do the rest of the job. That's not my type of work.' And I said, `Well, have you advised the lessor that you're not doing all of the work that needs to be done?', he said, `Advise the lessor that I won't be able to do everything.'
On April 22, 1981 Jones wrote Davilla saying that Mr. Shaw would not be completing the job and advising the lessor that he would continue to withhold the rent until enough was accumulated to employ his own contractor.
Discussions continued between Davilla and Jones concerning repairs to the exterior walls. At the same time, the tenant next door at 333 Bourbon (Ellwest Theatre) was also negotiating with Davilla. As part of those negotiations Ellwest agreed to pay the maintenance and repair costs for the entire 333-335 Bourbon Street building. On April 27, 1981 Jones wrote to Davilla acknowledging their telephone conversation:
"As you requested, I will get in touch with one or more contractors for prices on the north wall maintenance work ... I understand that you do not wish to get involved in this project beyond the work that you already have employed Mr. Shaw to do, and that you will convey to Ellwest for payment any invoice from any contractor."
The rent due for May was not paid. On May 21 Jones forwarded to Davilla an estimate of $30,850 he had obtained from a contractor to repair the leaking walls. The letter stated: "This letter confirms our understanding that the necessary exterior wall maintenance is to be done, that we will deduct the cost from our rent payments, and that you will collect in full from Ellwest under your current rental agreement with them."
On June 1, 1981 letters were exchanged between Davilla and Jones. Jones forwarded another estimate in the amount of $36,736 and recognized Davilla's prompt need *509 for bids for the repairs as part of lessor's negotiations with Ellwest. The letter continued:
"The heavy rains at 4 a.m. today once again brought in so much water through the exterior walls that we had to sweep it off the floor before starting today's business. Hence, you can see there is some urgency about doing this work and unless we hear otherwise from you within a week we shall assume that you want us to have the job done and deduct from rent payments."
Davilla's June 1 letter read:
"This letter is to confirm our conversation on Monday June 1, 1981. I Elizabeth A. Davilla do request that you do not give a work crew permission to start work at 333-35 Bourbon Street. I would like to get at least one more reasonable estimate, after which time I will take necessary action in getting the work completed. But you must allow me a reasonable amount of time. SO I DO NOT AUTHORIZE THE WORK BE STARTED AT THIS TIME."
The record indicates that the lessor contacted two additional contractors for prices, and that at least one of them visited the property, though no further bids were received, and no further repair work has been done by either lessor or lessee.
On July 10, 1981 a notice to vacate for nonpayment of rent totaling $3600 was personally served on Jones. The Rule to Evict Tenant was not filed in court until September 23, 1981 and was not heard until October 9.
The essence of the contract of lease is the enjoyment of a thing in exchange for a price. C.C. 2669. The lessee is bound to use the thing as a good administrator, for the intended use, and to pay the rent on the agreed terms. C.C. 2710. The lessee may be expelled from the property if he fails to pay the rent when due. C.C. 2712.
The lessor is bound by the very nature of the contract to deliver the thing to the lessee and maintain it in sufficiently good condition. C.C. 2692. The Civil Code makes provision for the division of the responsibility to repair between the lessor and lessee (C.C. 2693), but the parties by agreement may reallocate the responsibility among themselves. C.C. 11. Under the contract of lease between Davilla and Jones, the lessor was responsible for repairs to the roof and exterior walls.
The lessee asserted as a defense to the Rule to Evict Tenant that he was entitled to withhold the rent from the lessor because the lessor failed to make necessary repairs to the premises. C.C. 2694 provides:
"If the lessor do not make the necessary repairs in the manner required ... the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, and that the price which he has paid was just and reasonable."
The lessee argues that demand was properly made on the lessor to make the repairs, yet all of the repairs were not made. Lessee further argues that he did not make the wall repairs himself because he was prevented from doing so by the lessor. He therefore contends that his withholding of the rent was proper under C.C. 2694 and, consequently, eviction in this case would deprive him of the right to repair and deduct provided by the Civil Code.
The right of the lessee to apply the rent due to repairs arises only after the lessor has refused or neglected to make the repairs upon demand by the lessee. Brignac v. Boisdore, 288 So.2d 31 (La.1973). In Mullen v. Kerlec, 115 La. 783, 785, 40 So. 46 (1905), this court stated:
"The Civil Code seems plain enough that the right of the lessee to make indispensable repairs at the expense of the lessor arises only after calling on the lessor to make such repairs and after his refusal or neglect to make them. We do not think that the lessee can be permitted to anticipate the refusal of the lessor to repair and on that ground refuse to pay the rent when due."
*510 Jones' February 4 demand letter gave the lessor two weeks within which to commence repairs. Jones' testimony indicates the demand was complied with:
"On the 14th day of the month, the 14th day after mailing of the letter I was called upon by a man who presented himself as the roofer who had been sent to me by the lessor."
The roofer indicated that he would quote a price. He thereafter began the work. It was not until mid-April, after two months rent had already been withheld, that Jones learned that this contractor would not complete the entire job, and he notified the lessor. Jones forwarded the first bid he obtained for the wall work to the lessor with the understanding that the contractor would be paid by Ellwest Theatre. It was not until the letter of May 21 that there is any indication in the record that Jones would have to pay for the work himself, after another month's rent had been withheld.
There is no evidence in the record that Davilla refused to make the repairs. The June 1 letter relied on by defendant was not a refusal to make the repairs. Davilla's statement, "So I do not authorize the work to be started at this time" is not a refusal to complete the work where in the previous sentences Davilla had stated that one more estimate was desired and then work would be completed within a reasonable time. Neither do the actions of the lessor show neglect of the obligation to make the repairs. The lessor responded to each of the lessee's letters and was taking steps toward the completion of the repairs by negotiating with Ellwest and by arranging with the lessee to secure bids. The lessor's cautious approach to the repairs was justified by their high cost.
In any event, the June 1 letter relied on by Jones comes too late to support his withholding the rent previously due. Jones argues to this court that the eviction is inequitable since Davilla led Jones to believe that the repairs would be made, and, after asking for a reasonable amount of time in which to complete the repairs, moved to have Jones evicted. However, Jones offers no justification for his withholding the rent prior to the June 1 letter. His demand for the repairs was being met. C.C. 2694 gives the lessee the right to withhold rent only to apply it to the cost of the repairs. A lessee may not anticipate refusal or neglect to make the repairs or withhold rent to apply economic pressure on a lessor.
The judgment of the court of appeal is reversed, and the judgment of the district court is reinstated, all at the cost of the respondent.
LEMMON, J., dissents for the reasons assigned by the court of appeal.