530 So.2d 1207 (1988)
NEW HOPE GARDENS, LTD., Plaintiff/Appellee,
v.
Frankie LATTIN and Eunice Mason, Defendants/Appellants.
Nos. 19,686-CA, 19,687-CA.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1988.
*1208 Northwest Louisiana Legal Services, Inc. by Jerome Burden and Leon L. Emanuel, Shreveport, for defendants/appellants.
Edward Dixon, Shreveport, for plaintiff/appellee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
In these consolidated city court actions, judgments of eviction were rendered against the defendants-tenants, who appealed. For the reasons hereinafter explained, we affirm.
New Hope Gardens, Ltd. operated a federally subsidized low-income housing development in Shreveport. It received public funds from the U.S. Department of Housing and Urban Development (HUD) to supplement the tenant's rental payments. Two of the tenants, Frankie Lattin and Eunice Mason, participated in the government housing program. Ms. Lattin's $31 monthly rent was supplemented by a monthly payment of $221 by HUD to the landlord, and Ms. Mason's monthly rent of $205 was supplemented by a monthly payment of $190 to the landlord from HUD.
On April 15, 1987 Roy Lester, managing agent for New Hope Gardens, Ltd., instituted eviction proceedings against Ms. Lattin and Ms. Mason for nonpayment of rent in the city court. Defendants subsequently answered, denying failure to pay rent, and asserted the following affirmative defenses: tender of payment, breach of the lease contracts by the landlord's refusal to maintain the premises in a habitable condition, set-off or reduction of rent by the amount of improperly calculated HUD utility allowances and illegal rent increases, and abuse of rights through retaliatory eviction.
After several continuances, the rules were tried on July 28, 1987. Prior to trial the parties stipulated to nonpayment of rent and proper notice to vacate.
Both defendants testified that their apartments in the housing project had been uninhabitable since they moved in. Ms. Lattin complained about sewage backup outside her building, other plumbing problems, problems with electric sockets, flooding from other apartments and a leaky ceiling. Complaints to Lester about the problems were to no avail. Ms. Mason complained of similar problems, and added that she also had difficulty with the air conditioning, structural problems in her ceiling, and no light fixtures or drapes in her apartment.
*1209 The defendants stated that they withheld rent payments for March and April 1987 because of the uncorrected problems described above. After the filing of these suits, they allegedly purchased money orders in the amount of two months' rent, made payable to Northwest Louisiana Legal Services, and mailed them to that office for safekeeping pending resolution of the dispute.
The managing agent, Lester, admitted that sewage had backed up at the project on several occasions, but stated this problem was always corrected. He testified that this was usually caused by tenants placing foreign objects in their commodes. Generally, the existence of other problems was denied. Lester stated that he instituted these eviction proceedings because of defendants' failure to pay rent for the months of March and April 1987 and not because of their involvement in a tenants' rights organization.
Several HUD officials testified concerning official procedures used by the Department in connection with the management and administration of the government subsidized housing program. One of the witnesses testified that some time ago HUD made recommendations for repairs at New Hope Gardens and her records indicated many of the repairs were made. Another said that his office had received complaints from some of the tenants about sewage problems and that a tenant organization contacted him about needed repairs in 1984 and 1985, as a result of which he made recommendations to the landlord to correct the problems.
HUD regulations governing utility payments for government housing were also explained. First, the tenant's monthly rental is established by the owners of the housing project (based on factors prescribed by federal statute). Then the utility company, together with the management of the government housing, determines the average utility usage for each unit. This figure is subtracted by the landlord from the tenant's rent, so that theoretically this savings in rent can be used by the tenant to pay the utility bill. According to HUD official Hernandez, defendants' files indicated that their rent was properly calculated.
Ruling in favor of plaintiff, the trial judge noted that in summary eviction proceedings a lessor need only prove the existence of a lease and that the tenant has breached it. The tenant's case is limited to proof that the lessor is not entitled to possession, either because the tenant has not breached the lease or because the lease has not been properly terminated. Further, since the utility payment was not made by the government to the landlord, there was no basis for a set-off by the tenants. It was also pointed out that a tenant cannot withhold rent because of inhabitable conditions unless she first complies with the requirements of the law regarding right to repair and deduct. Finally, although the tenants could raise the defense of retaliatory eviction in the summary proceedings, the trial judge concluded it had not been proven.
The following issues have been raised on appeal:
1) Were defendants legally justified in withholding rental payments until the repairs they requested were made by the landlord?
2) Did the trial court improperly restrict the presentation of defenses in this case?
3) Was the trial court manifestly erroneous in concluding that the lessor was not guilty of retaliatory eviction?
4) Was the trial court's denial of defendants' motion for continuance an abuse of discretion?
Defendants contend that they were justified in withholding rental payments due because the landlord failed to maintain the leased premises in a habitable condition as required by La.C.C. Arts. 2692-2695, and thus breached the lease contract. In support of their position, they also rely on federal cases holding that a tenant's obligation to pay rent is dependent upon the landlord's performance of his obligations, including the warranty of habitability implied by state housing codes. It is also claimed that it was error for the trial judge *1210 to find defendants responsible for paying rent in spite of his finding that the premises were in an uninhabitable condition.
In Louisiana, the lessor has the obligation to maintain the leased premises in a condition fit for its intended use, and to make necessary repairs. La.C.C. Arts. 2692, 2693. If the lessor fails to fulfill this obligation, the law provides the lessee with two options. He can sue for dissolution of the lease agreement and resulting damages, or he can make indispensable repairs himself and deduct a reasonable cost thereof from the rent due. La.C.C. Art. 2694; Leggio v. Manion, 172 So.2d 748 (La.App. 4th Cir.1965); Bialy v. Katz, 273 So.2d 360 (La.App. 3d Cir.1973), writ denied, 275 So. 2d 870 (1973).
In order to justify withholding rent for repairs, however, the lessee must commence making the repairs within a reasonable time after the landlord's refusal to do so, and the repairs must actually be made by the lessee. Leggio v. Manion, supra. Defendants contend that they were not given a "reasonable" time in which to begin making repairs, pointing to their testimony that they withheld rent for only one month prior to receiving notice to vacate. In the Manion case, a summary eviction proceeding for nonpayment of rent in which the court rejected the defense of withholding for repairs, the rent was withheld for more than one year.
In this case, however, defendants' testimony that they tendered payments for the months of October through December, 1986, is contradicted by that of plaintiff's managing agent and his assistant, who both testified that no rent was paid by either defendant from October of 1986 through February of 1987, and that they did not refuse any payments tendered. This record is devoid of evidence that either defendant intended to effectuate the repairs and deduct the cost from her rent; on the contrary, it seems plain from their testimony that their purpose in withholding the rent was to apply economic pressure on the landlord so that he would make the repairs.
A lessee is not justified in retaining possession of the leased premises rentfree without pursuing either of these codal remedies. La.C.C. Art. 2694 gives the lessee the right to withhold rent only to apply it to the cost of the repairs; it does not sanction the application of economic pressure on a lessor by such action. Davilla v. Jones, 436 So.2d 507 (La.1983); Commercial Equipment Distributors v. Anderson, 431 So.2d 29 (La.App. 1st Cir.1983). Thus defendants' obligation to pay rent was not suspended, as they claim, by the landlord's breach of his obligations.
Regarding their reliance on federal law, defendants apparently request this court to apply state housing codes as a standard of habitability for the enforcement of La.C.C. Arts. 2692 and 2693. Although our Civil Code provides for a warranty by operation of law that the leased premises are fit for the purposes intended, [see Brunies v. Police Jury of Parish of Jefferson, 237 La. 227, 110 So.2d 732 (1959); Lazare Levy & Co. v. Madden, 116 La. 374, 40 So. 766 (1906); Notes, Lessor's Obligation to Maintain a Habitable Dwelling; Enforcement by Lessee and Retaliatory Action by Lessor, 36 La.L.Rev. 813 (1976) ] Louisiana courts have not been inclined to apply state housing codes as standards of enforcement for these warranties. Evans v. Does, 283 So.2d 804 (La.App.2d Cir.1973).
The purpose of the United States Housing Act of 1937, as amended, which is the federal statutory scheme under which public housing in the United States is provided, is to provide safe and sanitary low-rent housing. 42 U.S.C. § 1437a. This code also contains express provisions for enforcing the duties imposed by it. 42 U.S.C. § 1404a gives the Secretary of the Department of Housing and Urban Development the authority to sue and be sued with respect to its functions under the statute. This provision has been interpreted to indicate congressional intent to allow suit against the Secretary of HUD, but not against local public housing authorities. See McGhee v. Housing Authority of City of Lanett, 543 F.Supp. 607, 609, fn. # 1 (M.D.Ala., E.D.1982).
*1211 Moreover, the existence of federal law governing subsidized low-income housing does not preclude the application of state law regarding the respective rights and obligations between landlords and tenants. See U.S. Constructors & Consultants, Inc. v. Cuyahoga Metropolitan Housing Auth., 35 Ohio App.2d 159, 300 N.E.2d 452, 64 O.O.2d 267 (Ohio App.1973), holding that 42 U.S.C.A. § 1437, et seq., was not intended by Congress to exclude state action or to exercise supremacy in this area. Therefore the trial judge did not err in applying Louisiana law and finding defendants had failed to comply with the codal requirements pertaining to their right to repair and deduct.
The argument that the trial judge improperly limited the examination of several HUD officials called as defense witnesses, and thus prevented the development of applicable defenses, is also without merit. Defendants complain that their rent was illegally increased and "utility allowances" were improperly calculated, and for this reason they either owe no rent or at least owe a reduced amount. However, the remedy for this is found in the administrative grievance procedures provided by the federal statute, rather than as a defense to a summary eviction proceeding in city court. See 24 CFR §§ 245.310, 245.410, 245.420, and 966.50, et seq. In further support of this by analogy, federal law does not allow a tenant a private right of action, under the National Housing Act, against a landlord to challenge the computation of monthly rents. McGhee, supra.
Therefore these issues are not relevant as defenses to a summary eviction proceeding in city court for nonpayment of rent, and the trial judge properly excluded this testimony based on relevancy.
For these reasons, the trial judge's conclusion that defendants have not pursued the proper remedies for their complaints is correct. They failed to comply with Louisiana law regarding the lessee's right to repair and deduct, and they have not taken advantage of the administrative and federal remedies available to them. Under these circumstances, they cannot assert the landlord's failure to make repairs as a defense to his suit for eviction based on nonpayment of rent.
Retaliatory Eviction
By this argument, defendants claim that plaintiff-landlord abused his right to evict by instituting these proceedings solely in retaliation for their participation in the tenants' rights organization. They claim that the true motive for the decision to evict was to punish them for attempting to secure their rights, under the lease and applicable law, to have the premises repaired, rather than nonpayment of rent. In addition to being an illegal "retaliatory eviction", it is argued that this violates the requirement of La.C.C. Art. 1803 that contracts are to be performed in good faith.
Although the civilian doctrine of abuse of rights has been sparingly invoked in Louisiana, it has been expressly recognized by our Supreme Court in Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1976). See also Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La.1979). According to Professor Cueto-Rua, in his discussion of the French origins of the doctrine, an abuse of rights will be found in four instances: 1) when a right is exercised exclusively for the purpose of harming another or if the predominant motive is to cause harm; 2) in the absence of a serious and legitimate interest worthy of judicial protection; 3) when the right has been used in violation of moral rules, good faith, or elementary fairness; or 4) when the holder of the right exercises it for a purpose other than that for which the right was granted. Cueto-Rua, "Abuse of Rights," 35 La.L. Rev. 965 at 1000-1003. See also Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693 (La.App. 3d Cir.1980), writ denied, 394 So.2d 275 (La.1980); and Armstrong & LaMaster, Retaliatory Eviction as Abuse of Rights: A Civilian Approach to Landlord-Tenant Disputes, 47 La.L. Rev. 1 (1986).
In this case the trial judge found that the lessor was not guilty of abuse of rights through retaliatory eviction. The record supports this conclusion.
*1212 A lessee is bound to pay rent according to the terms of the lease, and may be expelled from the premises for failure to do so. La.C.C. Art. 2710(2); 2712; Grace Apartments v. Hill, 428 So.2d 862 (La.App. 1st Cir.1983); Garner v. Perrin, 403 So.2d 814 (La.App.2d Cir. 1981); Cameron v. Krantz, 299 So.2d 919 (La.App. 3rd Cir. 1974). La.C.C.P. Art. 4701 authorizes eviction proceedings when a tenant's right to possession has ceased because of expiration of the lease term, or failure of the lessee to perform his obligations, including nonpayment of rent.
The testimony and evidence clearly indicate that lessees failed to pay rent for at least two months, and possibly more. As previously discussed, the law allows a lessee to terminate the lease in case of a lessor's refusal to make needed repairs, or make them himself and deduct the cost from the rent. If he does neither, however, failure to pay rent constitutes a breach of the lease agreement, for which the lessor is entitled to terminate the lease and evict. Cameron, supra. Plaintiff testified that he instituted these eviction proceedings because defendants failed to pay rent in March and April, and not because of their organizational activities. The question of plaintiff's motive is essentially factual, involving a determination of witness credibility, and there is nothing in the record indicating an abuse of discretion by the trial judge.
Continuance
Defendants contend the trial judge erred in denying their motion for a continuance based on defense counsel's recuperation from surgery and return to his office one day prior to trial. It is argued that the judge's refusal to grant the continuance effectively denied them their day in court, as their attorney did not have sufficient time to prepare for an adequate presentation of their case.
La.C.C.P. Art. 1601 provides that a continuance may be granted in any case if there are good grounds therefor. La.C.C. P. Art. 1602 provides that a continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.
Jurisprudence interpreting these articles makes clear that granting or refusing to grant a continuance, absent a peremptory cause, lies within the sound discretion of the trial judge. His ruling on a motion for continuance should not be disturbed on appeal in the absence of clear abuse. Patterson v. Leggio, 347 So.2d 1262 (La.App. 1st Cir.1977); Halley v. Halley, 457 So.2d 108 (La.App. 2d Cir.1984), writ denied, 461 So. 2d 316 (La.1984).
Defendants rely on Halley, supra, for the proposition that there is an abuse of discretion on a motion for continuance if the trial court's discretion is exercised in such a way so as to deprive a litigant of his day in court. However, in that case, the defendant's attorney withdrew the day before trial was to begin, and she was forced to proceed unrepresented because the judge denied her motion in proper person for a continuance.
The situation in this case is quite different. The record reveals that this case had been recessed or continued four times before the denial complained oftwice on motion of defense counsel and twice at the judge's suggestion. Originally scheduled for April 22, 1987, this rule was not actually tried until July 20, 1987. Under these circumstances, we do not view the trial judge's denial of the continuance as an abuse of discretion, in spite of defense counsel's convalescence ending just before trial.
Conclusion
For the reasons stated, the judgments of the trial court are AFFIRMED, at appellants' costs.