GASKINS, J.'
 

 |2The plaintiff/tenant appeals from a city court judgment which found that she owed her former landlord $1,052 in rent and utilities, subject to a $500 credit for her deposit, or a total of $552. We affirm in part and amend in part.
 

 FACTS
 

 The plaintiff, Vanessa McMillian
 
 [1]
 
 (hereinafter “tenant”), and the defendant, Barbara Anderson (hereinafter “landlord”), entered into a lease agreement on January 14, 2009. By the terms of the agreement,
 
 *424
 
 the tenant rented a house owned by the landlord and located on Standifer Avenué in Monroe. The tenant agreed to pay a $500 security .deposit, and monthly rent of $500. The term of the lease was one year, and it began on January 15, 2009. In paragraph nine, the tenant stipulated that she had examined the premises and that they were in good order and repair and in a “safe, clean and tenantable condition.” According to paragraph 18, the tenant was responsible for securing and paying for all utility services on the premises. ^Additionally, paragraph 20 of the lease provided that major maintenance and repair not due to the tenant’s conduct were the responsibility of the landlord; otherwise, the tenant was obliged to keep and maintain the premises in good and sanitary condition and repair at her sole expense. The tenant moved into the three-bedroom, two-bathroom house on January 22, 2009.
 

 Because the tenant was eligible for Section 8 assistance, the Monroe Housing Authority (MHA) inspected the house to see if it met Section 8 standards. On January 26, 2009, the house failed inspection. On February 2, 2009, the house was reinspected and passed.
 
 [2]
 
 Once the house passed inspection, the MHA paid $380 of the $500 monthly rent while the tenant paid $120. However, it would not pay for the period when the tenant occupied the residence prior to the house passing inspection. The landlord prorated the rent and utilities for the seven-day period when the tenant lived in the house between inspections; however, the tenant only paid $10 toward the utilities.
 

 On November 5, 2009, another inspection of the house was conducted. A letter was sent to the landlord on that date advising that the property no longer met the housing authority standards and that repairs should be made within 30 days for the house “to remain active under the terms and conditions of the Housing Assistance Payments contract.” Among the failed |4items were a closet needing a clothes rod, commodes needing caps over anchor bolts, electricity being off in two bedrooms and a bathroom, and the Vent-a-Hood not working.
 

 At some point, the tenant received a notice of rent change from the MHA. The letter stated that following annual review of the family’s income, the tenant’s portion of the rent would be reduced to $87, effective February 1, 2010; the MHA’s portion would be $433, for a total of $520 in rent. The letter referred to a housing assistance payments contract between the owner of the house and the Public Housing Authority which was dated February 2, 2009, and entered into on behalf of the tenant. No copy of any such contract is found in the appellate record.
 

 Toward the end of the lease term, the landlord offered to let the tenant sign a new lease; however, the monthly rent under the new agreement would be $550. The tenant did not sign the lease. She attempted to pay $87 to the landlord by money order on February 2, 2010. The landlord refused to accept the payment from the tenant and initiated eviction proceedings. The tenant moved out and returned the keys to the landlord on March 1, 2010. On that same day, the tenant filed the instant suit in city court against the landlord for failure to return her $500 deposit.
 

 
 *425
 
 1 ,VThe landlord answered on March 12, 2010. She asserted that the tenant moved into the rental house on January 22, 2009, and that she still owed prorated rent ($112) and utilities ($94) for January 2009. Also, she alleged that in January 2010, instead of receiving the $500 monthly rent, she was only paid $125. Additionally, she contended that the rent of $550 owed for February 2010 was not paid, and that damage to the drywall in the house amounted to $100.
 

 The matter was tried in city court on May 4, 2010. Neither party was represented by counsel. According to the tenant, she lived in the house until the end of February 2010; although she attempted to pay rent for that month, she testified that the landlord refused to accept it. She also stated that the house “constantly” failed inspection by the MHA and that Section 8 did not pay the rent when the house was not up to the city code. She testified that there was a variety of problems with the house, including the heating system. She asserted that the landlord did not bring her the new lease until February 2010.
 

 The landlord testified that the house failed the initial inspection but passed a second inspection two weeks later. Section 8 would not pay for the seven-day period the tenant lived there before the successful inspection. The landlord informed the tenant that she would have to pay prorated rent and futilities for that period of time. The tenant paid her $10 toward the utilities. Section 8 began paying its portion of the rent in February 2009. In November 2009, the MHA again inspected the house. According to the landlord, there were minor problemsO— including electrical issues and a missing clothes rod — which she corrected. Section 8 paid for December 2009, but not January or February 2010 when the tenant was still living there. The tenant paid her portion or $120 for January 2010. The landlord informed the tenant that she was raising the rent to $550; the tenant refused to sign the new lease. The tenant attempted to continue paying her share of the rent, but the MHA did not pay its share. The tenant finally returned the keys to the landlord on March 1, 2010. The landlord also testified that some walls in the house were damaged during the tenant’s occupancy; it cost $100 to repair them.
 

 At the conclusion of the evidence, the judge found that the lease expired on January 15, 2010, but the tenant remained until March 1, 2010. When the house failed inspection, Section 8 did not pay the rent; the court concluded that during those periods, the tenant was entitled to either break the lease and leave the premises or pay the rent herself. However, she was not entitled to live there rent-free. By the court’s calculations, the tenant owed $112 in rent for January 2009, $60 for prorated utilities in January 172009, $380 in rent for January 2010, and $500 for rent in February 2010, or a total of $1,052. This amount was subject to a credit of $500 for the tenant’s unreturned deposit. Finding that the evidence was insufficient, the court made no award to the landlord for the alleged damage to the house by the tenant. Judgment was signed May 10, 2010; it rejected the tenant’s demands but awarded the landlord damages of $1,052, subject to a $500 credit for the tenant’s deposit.
 

 The tenant, now represented by counsel, appeals.
 

 LAW
 

 A lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay. La. C.C. art.
 
 *426
 
 2668. The essential elements of a lease are the thing, the rent, and the consent of the parties.
 
 Shreveport Neon Signs, Inc. v. Williams,
 
 44,079 (La.App.2d Cir.2/25/09), 5 So.3d 977. The existence or nonexistence of a lease is a question of fact.
 
 Shreveport Neon Signs, Inc. v. Williams, supra.
 

 An appeals court may not set aside a trial court’s finding of fact in the absence of manifest error or unless clearly wrong. This standard requires the | ^appellate court to give great deference to credibility determinations made by the trier of fact.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989). To reverse a trial court’s factual determinations, a court of appeal must find, based on the record, that no reasonable factual basis for the findings exists and that the findings are clearly wrong or manifestly erroneous.
 
 Mart v. Hill,
 
 505 So.2d 1120 (La.1987). In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
 
 Stobart v. State through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993).
 

 DISCUSSION
 

 The tenant argues that the lease agreement was amended by the terms imposed by the MHA upon the landlord. She refers to language in La. C.C. art. 2676 that rent may be fixed by the parties or by persons designated by the parties. The tenant also argues that the lease did not begin until February 1, 2009, because the house failed the initial inspection and was not “inhabitable” on the start date set in the lease, January 15, 2009.
 
 [3]
 
 Thus, the tenant could not be liable for rent for the last week of January 2009. The tenant also maintains that she was only responsible for her portion of the rent | ¡,($120) and that the landlord’s recourse for the rest of the monthly rent ($380) is against the MHA.
 

 The landlord, also now represented by counsel, claims that the city court was not manifestly wrong in its rulings. She argues that she and the tenant contracted outside the terms of the MHA. She points to the provisions of the lease signed by them in which the tenant attested that she had inspected the premises and that they were tenantable. The lease also provided that certain of the matters, found objectionable in the November 2009 inspection, were minor repairs that the tenant was obliged to correct; thus, it was the tenant’s negligence — not the landlord’s— which caused the house to fail that inspection. The landlord also notes that the tenant had the option to leave the premises if the premises were unsuitable but chose not to do so.
 

 The tenant would apparently have this court rule that she was entitled to live in the landlord’s house rent-free during the times when the house failed inspection. Nothing in this record or in the law indicates that she had any such right.
 

 In Louisiana, the lessor has the obligation to maintain the leased premises in a condition fit for its intended use, and to make necessary repairs. La. C.C. art. 2691. If the lessor fails to fulfill this obligation, the law | ^provides the lessee with two options. He can sue for dissolution of the lease agreement and resulting damages, or he can make indispensable repairs himself and deduct a reasonable cost
 
 *427
 
 thereof from the rent due. La. C.C. arts. 2693, 2694.
 
 New Hope Gardens, Ltd. v. Lattin,
 
 530 So.2d 1207 (La.App. 2d Cir. 1988). A lessee is not justified in retaining possession of the leased premises rent-free without pursuing either of these codal remedies.
 
 New Hope Gardens, Ltd. v. Lattin, supra.
 

 [4]
 

 A
 
 lessee is bound to pay rent according to the terms of the lease, and may be expelled from the premises for failure to do so. La. C.C. arts. 2683(1) and 2704.
 

 In support of her argument that she is not liable to the landlord for the entire monthly rent, the tenant relies upon the following language which is found on the back of the last page of the unit inspection report by the MHA:
 

 Dear Landlord/Tenant:
 

 This is to inform you that an inspection was made at_on_This unit DOES NOT meet Housing Quality Standards required to participate in the Section 8 Housing Assistance Payments Program. Note owner/tenant responsibility on inspection.
 

 The housing payment will be on hold effective_with no funds lost until the abatement period. For any emergency items listed on the inspection (D-immediate action required), the abatement is effective_For all other items, the abatement is effective_ ■The payment will resume on the day the unit meets housing standards.
 

 |n When all deficiencies are corrected,
 
 it is your responsibility
 
 to phone the inspector at [phone number] to schedule a follow-up inspection.
 

 The family is only responsible for paying their portion of the rent which does not include any portion of abated rent by the' MHA. The family may request other housing if desired.
 
 [Emphasis theirs.]
 

 We note that this portion of the document had not been filled out.
 

 In the instant case, the most that we can say is that the landlord entered into some sort of contract with MHA on behalf of the tenant. However, no copy of that contract is found in this record. If some provision of this contract inured to the tenant’s benefit to allow her to avoid payment of the entire monthly rental price, it was incumbent upon her to produce it. The landlord testified that MHA refused to pay its portion of the rent when the house did not pass MHA’s inspection. In her testimony, she did not indicate that this was in contravention of their contract.
 

 Based upon the evidence that was produced at trial and Louisiana lease law, we affirm in part and amend in part the city court judgment in the instant case. The tenant was not entitled to free use of the landlord’s house and utilities for the seven-day period in January 2009. Thus, we affirm the city court’s award of $112 in prorated rent for January 2009 and $60 for prorated utilities in January 2009.
 

 The city court found that the tenant’s lease expired January 15, 2010. From January 1, 2010, until January 15, 2010, when the lease was still in |12effect but the rent was abated by the MHA, the tenant only owed her proportional share for one-half of a month, or $60. (Since she paid $120, she is entitled to a credit of $60, along with the $500 credit for her unre-turned deposit.) However, as to the second half of January 2010, after the lease terminated, the tenant owed for the entire prorated amount, or $250.
 

 
 *428
 
 We agree that the tenant owed the entire amount of rent for February 2010, or $500. Accordingly, we also affirm that portion of the city court’s ruling.
 

 CONCLUSION
 

 We affirm in part and amend the judgment of the city court. In relevant part, we recast the judgment to read as follows:
 

 IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the defendant, BARBARA ANDERSON, plaintiff in reconvention and against plaintiff, VANESSA MCMILLI-AN, defendant in reconvention in the full sum of NINE HUNDRED EIGHTY-TWO AND 00/100 DOLLARS ($982.00), subject to a credit of FIVE HUNDRED SIXTY AND 00/100 DOLLARS ($560.00).
 

 Costs in this court are assessed equally between the parties.
 

 AFFIRMED IN PART, AMENDED IN PART.
 

 [1]
 

 . There is confusion in the record as to the spelling of the tenant's last name, which is given interchangeably as "McMillon,” “McMillan,” and "McMillian.”
 

 [2]
 

 . The items requiring remedy included such things as venting the hot water heater to the exterior, installing a towel bar and a strike plate, and repairing a door frame. It also included installation of a stove and refrigerator; however, according to the inspection report showing that the house passed rein-spection, ownership of the stove and refrigerator appeared to belong to the tenant.
 

 [3]
 

 . Contrary to the tenant's assertion in brief, the record demonstrates that the utilities to the house were on but in the landlord's name. Subsequently, the tenant had them placed in her name.
 

 [4]
 

 . We acknowledge that the MHA may have guidelines that regulate these matters or may have a contract with the landlord that would direct a different decision. However, neither the guidelines nor any MHA/landlord' contracts were tendered into evidence.