CALLOWAY, J., Pro Tempore.
I1KM, Inc. (“KM”), is appealing the- lower court judgment dismissing its rule for eviction. For the reasons set forth in this opinion, we affirm. .
FACTS AND PROCEDURAL HISTORY
On or about January 24, 2001, KM leased Unit A in a commercial building, known as Claiborne Square Shopping Center, to Weil Cleaners, Inc. (‘Weil”), for a five-year term.[1] The monthly rent of $1,001 increased 15% in, 2006, and again in 2011. By August 2014, Weil had paid more than $180,000 in rent to KM.
According to the lease agreement, the monthly rent is due on the first day of the month and Is late after the 10th day of the month. On the 11th day, there is an automatic $25.00 late fee plus an additional $10.00 charge each day after the 10th day Until the monthly amount is paid in full.
Weil experienced water leakage.in its leased space from the inception of the lease. The leakage worsened when KM removed an awning over ■ the west entrance. In July 2014, Weil and KM discussed the water leakage, as well as KM replacing the awning.
On August 22,. 2014, KM initiated an eviction by tacking a 5-day notice to vacate on Weil’s door, for nonpayment of rent. After receiving notice, Weil sent KM a payment, KM subsequently filed a rule for eviction against Weil on September 2, 2014. On September 10, 2014, Weil filed exceptions of no right of action, lack of procedural capacity, lis pendens, and lack of subject matter jurisdiction. Weil later withdrew all of the exceptions, with the exception of lack of subject matter jurisdiction, whichJ¿was not considered.
Trial for this matter took place on September 10 and 12, 2014.
Melody Olson, the owner and president of KM since its inception in 1992, testified. Both parties stipulated that she is an authorized representative of KM. Ms. Olson’s position as authorized representative gave her the power to-lease the property. She testified that at the time the eviction proceedings commenced, the monthly rent was late six of the eight months in 2014. In fact, she did not receive the .rent for July 2014 until July 29, 2014. She further testified that as of August 22, 20Í4, Weil owed $1,660.32, which included the rent for August, as well as late fees for the months of July and August. Ms. Olson further testified that on August 26, 2014, she received a certified letter from Weil containing a payment. However, as advised, she did not open it because she had already initiated the eviction process.
Ms. Olson testified that the building at issue was built in 2000,' and that wind *115 would often cause water to come into the building from under the door. To prevent the water from coming into the building, she testified that KM caulked around the windows and doors, and cut “the concrete down right at the entrance of the side door.” Ms. Olson testified that about a year after the building was built, she had an awning added to circumvent the problems associated with the rain. However, she further testified that the awning was removed about a year and a half before the instant matter was brought before the court, because it began to rot. Ms. Olson further testified that on August 22, 2014, Mr. Donnie Weil told her that one of the reasons | ahe withheld the rent was because he was trying to “leverage” her into fixing the awning.
Mr, Donnie.Weil, Weil’s owner, president and custodian of records, testified that he withheld the rent to leverage Ms. Olson to fix the property. He further testified that he ’took steps to reduce the damage caused by the water coming in the door, such as hiring AAA Glass to install "a drip rail on the top of the door' to help minimize it. He did not ask Ms. Olson for reimbursement, opting to absorb the expense himself.
Additionally, Mr. Weil testified that at the time of the trial, he had tendered payment in full for all rent and late fees, plus $1,323.82 for the upcoming month’s rent.
Ronald James Ethington, an employee of KM, was qualified as an expert in floor repairs. He testified that he is responsible for construction and repairs of'KM’s property. When asked about water damage inside Weil’s, Mr. Ethington testified that normally when water seeps under the tile, the tile will loosen, thfe glue comes off, and the.tile pops up. He.further testified that he did not observe any loose tiles, and.that he only observed dirt and build-up on the floor.
Kimmie Olson, Ms. Olson’s ex-husband, testified that prior to Mr. Ethington assuming the responsibilities associated with the construction and repairs of KM’s property, he did 95% of the repairs. When asked if he ever witnessed water leaking into Mr. Weil’s suite, he testified:
Every time it rained I was called, not every time, but when a bad rain would come I would get a call. We actually bought a portable vacuum — a smaller one. I would go out there and have to vacuum the water off of the floors that came in from the |4windows.
Disagreeing with Mr. Éthington’s testimony, Mr. Olson further testified that prior to the awning removal, water seeped in through the windows in the building. After the awning was removed, water began to enter into the building through the front door. Mr. Olson testified that the awning was removed for safety reasons, and the front door under the awning was not a “weather door.” He attempted to put “stuff” under the door to prevent the water from coming inside, and he vacuumed gallons of water off the floor.
Mr. Weil was recalled to the stand and tendered as an expert in the field of. water damage and restoration of residential and commercial buildings. He admitted that dirt may have been part of the content on the tile, but water entering the building through the slab underneath, the tile also altered the condition of the floor tile. He also further explained his reasons for withholding his rent payments:
Now though, for the past few months as a business owner, and out of my concern — the water that gets in the.building — a customer will come in and slip. According to the lease, I am liable for that. Even though I do not feel that the water intrusion is my responsibility and *116 ■liability or that it is my responsibility to keep it fixed. I made many requests to have it taken care of and suites two, three, and four — a carpenter shored those up so they wouldn’t collapse. Mine was never shored up. So, a lot of times I would call Ms. Olson and leave.a message and wouldn’t get a returned call or a response via text. So, in July I decided to delay the payment of the rent and thinking that she is going to call me and ask why the rent has been delayed. I received no phone call. We had no conversation as to why the rent was delayed. We did have some text communication that sounded positive .and she was going to call Linda at Monroe Tent and Awning and have an'awning put up. I said,, “Great, this is going to happen.” So, I mailed the check. In August, I sent some texts requesting dates as to when this was going to happen. I didn’t send the August check thinking that I would get a response as to when this would happen. So, |fishe reassured me that she was going to take care of the problem and that she was going to put a new awning. All this is required is just a canvas awning as you see on suite two. That is all I ask, for an awning that will cover the front door and the windows. I believe it would minimize the water leakage. I don’t think it would eliminate it, but the amount of water that comes-it is a great concern. So, I mailed the August check. I didn’t send it certified. For some reason, she says she didn’t receive that check. So, I reissued that check and assured her that rent would always be on time in the future because I felt that she was going to take care of the problem. -Whether she has called Linda at Monroe Tent and Awning-I have no idea. ‘ It is not typical for me not to pay my bills on time, but sometimes you get to the point where you have to leverage customers to pay you and in this case, a landlord to. repair damages that have been going on and that we have been fighting for 13 and a half years.
The trial court dismissed KM’s rule for eviction after finding that KM’s act of accepting late payments from Weil during most months in 2014 waived KM’s right to evict Weil without first giving it advance, unequivocal notice that 1 late payments would not be accepted in the future.
KM appeals.
LAW; AND DISCUSSION
KM argues that the trial court erred in dismissing its rule for eviction. More specifically, KM argues that under the provisions of the lease, its prior failure to strictly enforce the provisions of the lease did not waive its rights, including the right to treat late payments as a default.
An appeals court may not set aside a trial court’s finding of fact In the absence of manifest error or unless clearly wrong. This standard requires the appellate court to give great deference to credibility determinations made by the trier of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse a trial court’s factual determinations, a court of appeal must find, Rbased on the record, that no reasonable factual basis for the findings exists and that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987); McMillian v. Anderson, 45,929 (La.App.2d Cir.1/26/11), 57 So.3d 422. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the .fact finder’s conclusion was a reasonable one. Stobart v. State through Department of Transp. and Dev., 617 So.2d 880 (La.1993).
A lease is a synallagmatic contract by which one party, the lessor, binds himself *117 to give to,the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay. La. C.C. art. 2668.
In Louisiana, the lessor has the obligation to maintain the leased premises in a condition fit for its intended use, and to make necessary repairs. La. C.C. art. 2691. If the lessor fails to fulfill this obligation, the law provides the lessee with two options. He can sue for dissolution of the lease agreement and resulting damages, or he can make indispensable repairs himself, and deduct a reasonable cost thereof from the rent due. La. C.C. arts. 2693, 2694; New Hope Gardens, Ltd. v. Lattin, 530 So.2d 1207 (La.App. 2d Cir.1988). A lessee is not justified in retaining possession of the leased premises rent-free without pursuing either' ’ of these codal remedies. New Hope Gardens, Ltd., supra.
The lessee is bound to pay the rent in accordance with the agreed terms. La. C.C. art. 2683(1). If the lessee fails to pay the rent when due, the |7lessor may, in accordance with the provisions of the Title “Conventional Obligations or Contracts,” dissolve the lease and may regain possession in the manner provided by law. La. C.C. art. 2704. .
The lease in the instant case contained the following language:
24.1 Any of the following shall constitute a default by Lessee: (a) failure to pay any rental or additional rental ... under this lease within ten days after the due date.
24.2 If any such default shall occur, then, in addition to any other rights which Lessor may have under law or under the provisions of this lease Lessor shall have the following options: (c) immediately to cancel this lease and to proceed for the past due installments.
24.7 Failure strictly and promptly to enforce the conditions set forth above shall not operate as a waiver of Lessor’s right. - Lessor expressly reserves the . right always to enforce prompt payment of rent and to treat the failure to pay rent -in accordance with this lease as a default, regardless of any indulgences or extensions previously granted. The acceptance of rent by Lessor shall not waive any preceding breach by Lessee of.any term oí- condition, of this; lease, other than the failure of Lessee to pay the particular rental so ■ accepted, regardless of Lessor’s .knowledge of the preceding breach at the time of the acceptance of such rent. Lessor’s acceptance of any-rent in. arrears, or after notice of institution of any suit for possession or.fpr cancellation of this lease, will not be considered as a waiver of such notice or of the suit, or of any of the other rights of Lessor. The waiver by Lessor or Lessee of any breach of this lease shall not be deemed a waiver of any subsequent breach of the same .or any other term or condition of this lease. No term or condition of this lease shall be deemed to have been waived by Les.sor or Lessee unless such waiver is in writing and signed by the Lessor or Lessee.
In July and August 2014, Mr. Weil and Ms. Olson discussed' the water leakage, as well, as KM replacing the awning, via text messages. On July 25, 2014, Mr. Weil asked Ms. Olson’s “thoughts on a canvas awning.” He also informed her that he placed her rent check, albeit late, in the mail that day,. Throughout July and August 2014, Ms..Olson expressed her plans lato install an awning over the door, but never did. We note that Mr. Weil did not sue for dissolution of the lease agreement and resulting damages for Ms. Olson’s failure to have the awning installed, nor did he install the awning himself and deduct a *118 reasonable cost thereof from the rent due. On August 22, 2014, Mr. Weil asked her, “Have you fulfilled your obligations as the lessor to me the lessee?” She replied, “I have but you have not in your failure to pay your rent.” However, she never gave him notice that- she would no longer accept late payments from him.
As stated in the facts section of this opinion, Ms. Olson testified that at the time the eviction proceedings commenced, she accepted Weil’s monthly rent payments late approximately six to eight times 2014. Where a lessor customarily accepts these late rental payments, such custom has the effect of altering the original contract with respect to punctuality of rent payments. Versailles Arms Apartments v. Pete, 545 So.2d 1193 (La.App. 4th Cir. 1989); Housing Auth. of the Town of Lake Providence v. Allen, 486 So.2d 1064 (La.App. 2d Cir.1986). In such cases the landlord’s right to strict enforcement of the lease rental provisions is considered to have been waived; the lessor must give advance notice of his intention to strictly enforce the lease in the future. Id. The basis for such a rule is the general feeling that it is inequitable to allow a lessor to mislead or lull a tenant into a false sense of security by accepting late rent payments for an .extended period, without a demand for punctuality, and then on a future date of his own choosing, cancel the lease for nonpayment of rent. Id.
Here, KM accepted late rent payments for several months prior to 19August 2014. The record does not indicate that, prior to the eviction proceedings, Weil was given any prior notice' that, beginning in August, KM would strictly enforce the lease provision requiring payment by the 10th day of each month. For this reason, we find that KM waived any right to evict Weil for late payments.
Additionally, Louisiana law is clear that the dissolution of a lease for nonpayment of rent is subject to judicial control according to the circumstances. Edwards v. Standard Oil Co. of La., 175 La. 720, 144 So. 430 (1932); Martin Timber Co., Inc. v. Pegues, 30,361 (La.App.2d Cir.7/6/98), 715 So.2d 728, writ denied, 98-2124 (La.12/11/98), 729 So.2d 590. Judicial control is an equitable doctrine by which the courts will deny' cancellation of the lease when the lessee’s breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact. Carriere v. Bank of La., 95-3058 (La.12/13/96), 702 So.2d 648; Western Sizzlin Corp. v. Greenway, 36,088 (La.App.2d Cir.6/12/02), 821 So.2d 594, writ denied, 2002-2326 (La.11/15/02), 829 So.2d 436. As this court stated in Ergon, Inc. v. Allen, 593 So.2d 438 (La.App. 2d Cir.1992), under the doctrine of judicial control, Louisiana courts are vested with discretion under -certain circumstances to decline- to grant a lessor cancellation = of a' lease although such right appears to be otherwise available to him. See also Martin Timber Co., Inc., supra. As a result, a lessee’s failure to pay rent timely does -not automatically require the termination of the lease. Shreveport Neon Signs, Inc. v. Williams, 44,079 (La.App.2d Cir.2/25/09), 5 So.3d 977; Huckabay v. Red River Waterway Com’n, 27, 113 (La.App.2d Cir.10/12/95), 663 So.2d 414, writ denied, 95-3007 (La.3/8/96), 669 So.2d 403. Gases which have applied judicial control of leases generally involve circumstances where a lessee had made a good faith error and acted reasonably to correct it. Ergon, Inc., supra.
The Louisiana Civil Code provides that in an action involving judicial dissolution, the obligor who failed to perform may be granted, according to the circumstances, an additional time to perform. *119 La. C.C. art. 2013. Lease cancellation is not favored in Louisiana and a lease will only be dissolved when a lessor provides clear entitlement to dissolution. Shreveport Neon Signs, Inc., supra; Housing Auth. of Town of Lake Providence v. Burks, 486 So.2d 1068 (La.App. 2d Cir. 1986).
In light of our analysis, we find that the trial court did not err in dismissing KM’s rule, for eviction. We further find this matter to be a proper one for the application of judicial control. As discussed throughout this opinion, Weil breached . its obligation to timely pay rent within ten days after its monthly due date. Even though it may appear .that KM is entitled to a cancellation of the lease due to the untimely payment of the rent, the trial court did not err in exercising its discretion to decline to grant KM cancellation of the lease. KM did not demand payment from Weil for the.past due rent and give him the opportunity to pay before taking action to terminate the lease and evict him. We note that at the time of trial, Weil had performed its obligation of paying the rent for August with late fees, as well as paying the rent for the following month. Therefore, this assignment of error is without merit.
^CONCLUSION
For the foregoing reasons, we hereby affirm the- trial court’s judgment. . The costs of this appeal are assessed against KM. '
AFFIRMED.
CARAWAY, J., concurs with‘written reasons.

. At the time trial, -Weil had exercised two of its three 5-year options.